No. 14-1986

In the

# United States Court of Appeals
## for the Third Circuit

SYLVIA RODRIGUEZ,
*Plaintiff-Appellant*

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,
*Defendant-Appellee*

**On Appeal from the United States District Court
for the District of New Jersey**

**BRIEF OF DEFENDANT-APPELLEE**

Joshua Bachrach (PA Bar No. 68788)
Heather Austin (PA Bar No. 84537)
Wilson, Elser, Moskowitz, Edelman
& Dicker LLP
The Curtis Center, Suite 1130 East
Independence Square West
Philadelphia, PA 19106-3308
(215) 606-3906
joshua.bachrach@wilsonelser.com

*Counsel for Defendant-Appellee*

## CORPORATE DISCLOSURE STATEMENT

Reliance Standard Life Insurance Company is a subsidiary of Tokio Marine

Holdings, Inc. (TMG), which is publicly traded.

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CITATIONS ........................................................................ iv

STATEMENT OF ISSUES ..................................................................... 1

STATEMENT OF THE CASE.................................................................. 2

A.    Procedural History ..................................................................... 2

B.    Factual History............................................................................ 4

STANDARD OF REVIEW .................................................................... 10

SUMMARY OF ARGUMENT ............................................................... 11

ARGUMENT ......................................................................................... 13

I.    THE DISTRICT COURT CORRECTLY ENTERED JUDGMENT IN
      FAVOR OF RELIANCE STANDARD ...................................................... 13

      A.    Substantial Evidence Supports the Application of the Plan's
            Twenty-Fourth Month Limitation ....................................... 15

      B.    The Denial of Any Occupation Benefits is Supported by
            Substantial Evidence ........................................................ 20

            1.    The Terms of Coverage Changed When Benefits Were
                  Denied. ................................................................ 21

            2.    Reliance Standard Had New Evidence When it Denied
                  the Claim for Benefits. ........................................... 24

      C.    Ms. Rodriguez Relies on Impermissible Evidence ............................ 28

      D.    Ms. Rodriguez Received a Full and Fair Review ............................... 31

CONCLUSION ........................................................................................ 34

COMBINED CERTIFICATIONS ........................................................... 35

# TABLE OF CITATIONS

## Cases

*Abnathya v. Hoffmann-La Roche, Inc.*,
  2 F.3d 40 (3d Cir. 1993) .......................................................................10

*Anspach v. Phila. Dept. of Public Health*,
  503 F.3d 256 (3d Cir. 2007) ................................................................16

*Balas v. PNC Fin. Servs. Grp., Inc.*,
  No. 10-249, 2012 WL 681711 (W.D. Pa. Feb. 29, 2012) ....................23

*Balmert v. Reliance Standard Life Ins. Co.*,
  601 F.3d 497 (6th Cir. 2010) ...............................................................30

*Black & Decker Disability Plan v. Nord*,
  538 U.S. 822 (2003) ................................................................. 18, 19, 27

*Calvert v. Firstar Fin., Inc.*,
  409 F.3d 286 (6th Cir. 2005) ...............................................................26

*Doroshow v. Hartford Life & Accident Ins. Co.*,
  574 F.3d 230 (3d Cir. 2009) ................................................................14

*Farrell v. Planters Life Savers Co.*,
  206 F.3d 271 (3d Cir. 2000) ................................................................10

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989) .............................................................................10

*Fleisher v. Standard Ins. Co.*,
  679 F.3d 116 (3d Cir. 2012) ......................................................... 17, 34

*Fought v. UNUM Life Ins. Co. of America*,
  379 F.3d 997 (10th Cir. 2004) .............................................................26

*Glazer v. Reliance Std. Life Ins. Co.*,
  524 F.3d 1241 (11th Cir. 2008) ...........................................................30

*Hightshue v. AIG Life Ins. Co.*,
  135 F.3d 1144 (7th Cir. 1998) .............................................................27

iv

*Johnson v. UMWA Health & Ret. Funds*,
    125 F. App'x 400 (3d Cir. 2005) ..........................................................28

*Juliano v. Health Maint. Org. of N.J.*,
    221 F.3d 279 (2d Cir. 2000) ................................................................32

*Kao v. Aetna Life Ins. Co.*,
    647 F. Supp. 2d 397 (D.N.J. 2009) ................................................ 31, 32

*McCann v. Unum Provident*,
    No. 11-3241, 2013 WL 1145422 (D.N.J. Mar. 18, 2013) ....................27

*Melrose, Inc. v. City of Pittsburgh*,
    613 F.3d 380 (3d Cir. 2010) ................................................................10

*Metro. Life Ins. Co. v. Glenn*,
    554 U.S. 105 (2008) ..................................................................... 10, 14

*Metzger v. UNUM Life Ins. Co. of Am.*,
    476 F.3d 1161 (10th Cir. 2007) ...........................................................30

*Michaels v. Equitable Life Assur. Society*,
    305 F. App'x 896 (3rd Cir. 2009) ........................................................19

*Mitchell v. Eastman Kodak Co.*,
    113 F.3d 433 (3d Cir. 1997) ................................................................28

*Montour v. Hartford Life & Acc. Ins. Co.*,
    588 F.3d 623 (9th Cir. 2009) ...............................................................26

*Nichols v. Verizon Commc'ns, Inc.*,
    78 F. App'x 209 (3d Cir. 2003) ............................................................27

*Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am.*,
    222 F.3d 123 (3d Cir. 2000) ................................................................21

*O'Sullivan v. Metropolitan Life Ins. Co.*,
    114 F. Supp. 2d 303 (D.N.J. 2000) ......................................................29

*Pilumi v. Att'y Gen. of the U.S.*,
    642 F.3d 155 (3d Cir. 2011) ................................................................10

*Ruehl v. Viacom, Inc.*,
   500 F.3d 375 (3d Cir. 2007) ...................................................................10

*Silver v. Executive Car Leasing Long-Term Disability Plan*,
   466 F.3d 727 (9th Cir. 2006) ................................................................30

*Vitale v. Latrobe Area Hosp.*,
   420 F.3d 278 (3d Cir. 2005) .................................................................22

**Regulations**

29 C.F.R. § 2560.503-1 ...........................................................................30

29 C.F.R. § 2560.503-1(h)(2)(iii) ..........................................................30

**Other Authorities**

http://www.accessdata.fda.gov/drugsatfda_docs/label/2008/013263s083lbl.pdf. ..16

http://www.fda.gov/downloads/Drugs/DrugSafety/ucm088999.pdf.......................16

## STATEMENT OF ISSUES

I.    Whether the district court correctly decided that it was not arbitrary and capricious for Reliance Standard to conclude that the Plan's twenty-four month limitation on benefits for disabilities caused by or contributed to by a mental or nervous disorder applies to the claim when Ms. Rodriguez was diagnosed with anxiety and her doctor prescribed anti-anxiety medication.

II.    Whether the district court correctly decided that it was not arbitrary and capricious for Reliance Standard to conclude that Ms. Rodriguez is not totally disabled from any occupation due to a physical condition when several independent physicians in different fields, many of whom examined the claimant, were unable to find any physical limitations and her own treatment records did not support her claim.

III.    Whether the district court correctly refused to consider evidence from Ms. Rodriguez that is not included in the administrative record.

IV.    Whether the district court correctly decided that Ms. Rodriguez received a full and fair review of the claim denial.

## STATEMENT OF THE CASE

**A.     Procedural History**

Sylvia Rodriguez filed her lawsuit against Reliance Standard Life Insurance Company in the United States District Court for the District of New Jersey on August 2, 2012.  JA 20.  Reliance Standard answered the Complaint on August 17, 2012.  JA 21.  Thereafter, an Amended Complaint and Answer were filed on August 24 and August 27, 2012, respectively.  JA 21.  Pursuant to the district court's Scheduling Order, cross motions for summary judgment were filed on May 24, 2013.  JA 21-22.  After further briefing, on January 31, 2014, Judge Dennis M. Cavanaugh entered an Opinion and Order granting the motion for summary judgment of Reliance Standard and denying the cross motion of Ms. Rodriguez. JA 2-12.

The district court Opinion recognized that to qualify for benefits beyond twenty-four months, (1) Ms. Rodriguez had to be Totally Disabled from "any occupation" and (2) benefits are not payable beyond twenty-four months for a disability that is caused by or contributed to by a mental disorder.  JA 3.  Based on the Plan's grant of discretion, the court reviewed Reliance Standard's claim decision under the arbitrary and capricious standard of review.  JA 6.  Judge Cavanaugh noted that the final decision letter "cite[d] to numerous reports from Physicians to support its determination that [Ms. Rodriguez] is capable of

2

sedentary work and therefore not Totally Disabled." JA 7. Accordingly, the conclusion of Reliance Standard was not arbitrary and capricious. JA 8.

As for the Plan's mental illness limitation, the district court Opinion correctly stated that the treating physician identified anxiety as an impression and attempted to treat Ms. Rodriguez with anti-anxiety medication. JA 9. An examining doctor also described Ms. Rodriguez as "depressed" and noted prescriptions for psychiatric medications. JA 9. Therefore, the court also concluded that reliance on the twenty-four month Mental or Nervous Disorders Limitation to deny further benefits was not arbitrary and capricious. JA 10. Finally, the district court rejected the argument from Ms. Rodriguez that the denial letter she received from Reliance Standard was insufficient. JA 10-11. According to the court, the letter "gave [Ms. Rodriguez] sufficient information related to her appeal and … [she] received a full and fair review." JA 11.

Ms. Rodriguez filed a motion for reconsideration of the decision in favor of Reliance Standard on February 6, 2014. JA 22. Reliance Standard submitted a response in opposition on February 17 and Ms. Rodriguez replied on February 21, 2014. JA 22. In the interim, Judge Cavanaugh retired from the bench. Therefore, on April 1, 2014, the case was reassigned to Judge Susan D. Wigenton. JA 22.

On April 16, 2014, Judge Wigenton entered an Opinion denying the motion for reconsideration. JA 13. Judge Wigenton rejected the argument of Ms.

Rodriguez that Judge Cavanaugh committed a manifest error of law in his ruling. JA 16.  The court disagreed with Ms. Rodriguez that the decision to terminate benefits was based on the same evidence and under the same standards under which benefits were previously approved.  JA 16.  In support of the conclusion, the court referred to the "more stringent" definition of Total Disability that applied to the claim after twenty-four months.  JA 17.  Because Ms. Rodriguez "merely repeated the arguments that were proffered in her original motion for summary judgment" she failed to satisfy the requirements of a motion for reconsideration and her motion was denied. JA 18.   Ms. Rodriguez timely filed a notice of appeal on April 21, 2014.  JA 23.

## B.   <u>Factual History</u>

Reliance Standard issued to International Specialty Products the group long term disability policy under which Ms. Rodriguez is claiming benefits.  JA 34-67, 421-424.  The Policy defines total disability for the first 24 months as the inability to perform the material duties of one's *own occupation*.  JA 43.  After benefits are paid for twenty-four months the definition of Total Disability changes to the more stringent "any occupation" test for Total Disability.  JA 43.  Additionally, the Policy limits benefits to 24 months for a disability that is caused by or contributed to by a mental or nervous disorder.  JA 309-311, 319-325.

4

Ms. Rodriguez stopped working on July 26, 2008 and claimed disability due to dizziness, lightheadedness, near syncope, drowsiness and fatigue.  JA 393-397.  According to Richard Podell, M.D., the treating physician, tilt table testing confirmed these symptoms; however, the testing was performed and symptoms appeared only when Ms. Rodriguez was not taking her medication.  SA 1351.  Still, Dr. Podell did not believe that her problems would last for long.  On October 27, 2008, Dr. Podell stated that Ms. Rodriguez would be able to return to work by approximately January 2009.  JA 405-406.

Reliance Standard approved the claim and paid twenty-four months of disability benefits to Ms. Rodriguez.  JA 310.  After doing so, Reliance Standard investigated whether she remained Totally Disabled under the new "any occupation" test and whether the mental illness limitation barred further benefits.  After completing its investigation, Reliance Standard concluded that Ms. Rodriguez was not eligible to receive benefits beyond twenty-four months.  JA309-311.

According to Dr. Podell's treatment notes, and contrary to her protestations to the contrary in her Brief, Ms. Rodriguez was being treated for anxiety.  JA 430-440.  On April 23, 2009, Dr. Podell identified "anxiety" as a diagnosis and Ms. Rodriguez personally associated her anxiety with her dizzy spells.  JA 887.  Dr. Podell tried to prescribe "valium type [medication]" but Ms. Rodriguez refused.

JA 891.  Later, Dr. Podell prescribed Prozac for anxiety.  JA 971.  Robert Lintz, M.D. also noted on at least four occasions that when Ms. Rodriguez was stressed it aggravated her symptom of fatigue.  JA 1188, 1183, 1181, 1178.

Dr. Podell submitted a letter in support of the disability claim but oddly he failed to mention the diagnosis of anxiety which appears throughout his records. JA 940-943, 430, 887-888, 889-891, 876-877, 1151-1152, 961-973.  In his May 29, 2010 letter, Dr. Podell claimed that Ms. Rodriguez continued to be disabled based primarily on chronic fatigue syndrome and fibromyalgia.  JA 940-943. Accordingly, Reliance Standard asked Ms. Rodriguez to undergo independent medical examinations by a Rheumatologist and an Otolaryngologist  JA 1050-1052.

Jason Faller, M.D., a Rheumatologist, performed an in-person examination to assess whether Ms. Rodriguez had any restrictions or limitations related to fibromyalgia and chronic fatigue syndrome.  Notwithstanding the subjective complaints of fatigue and dizziness made by Ms. Rodriguez during the examination, Dr. Faller concluded that she is capable of performing sedentary level work.  Dr. Faller also remarked that he could not "exclude the possibility of a psychological component" based on the demeanor of Ms. Rodriguez during the examination.  JA 1088.

The complaints of lightheadedness and dizziness were addressed by Stephen Freifeld, M.D., an Otolaryngologist. JA 1073-1077. Dr. Freifeld found no "ear or vestibular diagnosis as these areas are normal." JA 1076. He also found absolutely no objective findings within his area of expertise to support a claim of disability. JA 1073-1077.

Based on the medical information, Reliance Standard concluded that Ms. Rodriguez was no longer eligible for benefits because any disability was caused by or contributed to by a mental or nervous disorder which is limited to twenty-four months and she failed to submit satisfactory proof that she was totally disabled from performing the duties of any occupation due to a physical condition or conditions. JA 308, 309-311. Ms. Rodriguez appealed the discontinuation of benefits, during which time Reliance Standard requested another independent medical examination.

Michael Abeles, M.D., a Rheumatologist, examined Ms. Rodriguez during the administrative appeal. JA 1206. Dr. Abeles concluded that fibromyalgia "does not appear to be the limiting factor in work" because, based on his examination and the medical records, Ms. Rodriguez is capable of frequently or continuously sitting, standing, walking, bending, squatting, and driving. JA 1211-1212. According to Dr. Abeles, "dizziness [ ] seems to be her major problem" but he was unable to identify a cause. JA 1212. Dr. Abeles speculated that a condition

outside of his specialty, POTS,[1] might be causing this symptom.  However, he stated that there was no disabling rheumatologic condition.  JA 1212.

Based on the suggestion of Dr. Abeles, Ihsan Haque, M.D., an internal medicine and cardiovascular disease specialist, evaluated whether the complaints of dizziness from Ms. Rodriguez were due to POTS.  SA 1345-1361.  Dr. Haque found no support in the record for the diagnosis of POTS or a disability. (AR1239).  As for the positive tilt table test relied on by Ms. Rodriguez, Dr. Haque noted that it was performed when she was not taking her medication, therefore, it did not mean that she would experience symptoms under normal work situations. SA 1351.  In addition, the records indicated that Ms. Rodriguez responded well to treatment.  SA 1351.

To further consider the complaints of dizziness, Reliance Standard asked David Foyt, M.D., a board certified Otolaryngologist, to review the records. SA 1319-1336.  Dr. Foyt concluded that Ms. Rodriguez "does have full work capacity and is not restricted in any way on activities" due to an otolaryngology condition. JA 324.

Based on all of the information in the claim file, Reliance Standard concluded that its decision to discontinue benefits after twenty-four months was

---

[1] Postural Orthostatic Tachycardia Syndrome.

correct.  Counsel for Ms. Rodriguez was notified of the decision on August 7, 2012.  JA 319-325.  Thereafter, she filed this lawsuit.

## STANDARD OF REVIEW

The Court of Appeals exercises plenary review over a district court's summary judgment ruling. *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)). In conducting this review, the appellate court assesses the lower court record using the same summary judgment standard that was applied. *Farrell v. Planters Life Savers Co.*, 206 F.3d 271, 278 (3d Cir. 2000).

Where, as in this case, the plan grants to the claims administrator discretionary authority to determine eligibility for benefits, the Court will review the denial of benefits under the arbitrary and capricious standard. *See Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 115-16 (2008); *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). A claim administrator's decision is arbitrary and capricious only "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffmann-La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir. 1993)

Finally, this Court reviews a denial of a motion for reconsideration for abuse of discretion. *See Pilumi v. Att'y Gen. of the U.S.*, 642 F.3d 155, 158 (3d Cir. 2011).

## SUMMARY OF ARGUMENT

After receiving long term disability benefits under the ERISA-governed Plan for twenty-four months, two new Plan provisions applied to the claim of Ms. Rodriguez. First, her disability could not be caused by or contributed to by a mental or nervous disorder. Second, Ms. Rodriguez had to prove that she was Totally Disabled from "any occupation" instead of her own occupation. After conducting multiple in-person medical examinations in different fields in addition to independent reviews of the treatment records, Reliance Standard reasonably concluded that Ms. Rodriguez was ineligible to receive additional benefits under the Plan. That decision cannot be considered arbitrary and capricious.

Ms. Rodriguez takes the remarkable position in her Brief that the mental or nervous disorders limitation does not apply to her claim because there was no actual diagnosis. But contrary to her position, her own doctor diagnosed her with "anxiety" and prescribed anti-anxiety medications. Ms. Rodriguez also told her doctors that her symptoms were related to stress. Therefore, Reliance Standard's reliance on the mental or nervous disorders limitation cannot be considered arbitrary and capricious.

Likewise, it was not arbitrary and capricious for Reliance Standard to conclude, based on the medical evidence, that Ms. Rodriguez failed to prove that she was Totally Disabled from "any occupation" solely as a result of a physical

condition.  Two Rheumatologists could not find any evidence of impairment in their specialty area.  Otolaryngologists were also unable to find a cause for her complaints of dizziness.  This is not surprising since Ms. Rodriguez related this symptom to anxiety.

Ms. Rodriguez raises a number of arguments in her Brief, none of which has merit.  First, she argues that the denial of benefits was improper because there was no change in her medical condition from the time benefits were awarded and they were later discontinued.  This argument ignores the Plan terms that only applied to her claim after twenty-four months.  The fact that benefits were previously paid is not inconsistent with the denial based on the two newly applicable Plan terms.

Next, Ms. Rodriguez alleges that the district court erred by refusing to consider an expert report that was prepared after the final claim decision and is not contained in the Administrative Record.  The law of this and every other Circuit is clear that the record on review consists of the evidence before the plan at the time of the final decision.  There is no authority which permits a court to consider new factual evidence regarding a claimant's eligibility for benefits.  There is also no reason why Ms. Rodriguez could not have submitted a report from an expert while her claim was still pending.

The district court did not err when it entered judgment in favor of Reliance Standard.  Accordingly, the judgment should be affirmed.

**ARGUMENT**

## I.   THE DISTRICT COURT CORRECTLY ENTERED JUDGMENT IN FAVOR OF RELIANCE STANDARD

Two district court judges correctly decided that the denial of additional long term disability benefits was not arbitrary and capricious under the terms of the benefit plan.   On January 31, 2014, Judge Dennis Cavanaugh denied the motion for summary judgment of Ms. Rodriguez and granted the summary judgment motion of Reliance Standard.   JA 11.   Thereafter, Ms. Rodriguez filed a motion for reconsideration that was denied by Judge Susan Wigenton on April16, 2014.[2]   JA 19.   Remarkably, Ms. Rodriguez relies on the same unsupported arguments in her appeal that were already addressed by Reliance Standard and rejected by two district court judges.

Under the Plan, benefits for a disability that is "caused by or contributed to by mental or nervous disorders" are limited to twenty-four months.   JA 55.   As Ms. Rodriguez began receiving long term disability benefits on January 22, 2009, the limitation applied to her claim at the time benefits were discontinued two years later.   JA 3.   In addition, the Plan's definition of "Total Disability" changes after benefits are received for twenty-four months.   When benefits were awarded, Ms. Rodriguez had to prove that she was unable to perform the duties of her own

---

[2] The case was transferred to Judge Wigenton following the retirement of Judge Cavanaugh.   JA 22.

occupation.  JA 43.  Ms. Rodriguez was employed as a Global Lead Analyst for GAF Materials Corporation before claiming disability due to complaints of chronic fatigue.  JA 2.  To receive benefits after twenty-four months, Ms. Rodriguez had to prove that she was unable to perform the duties of "*Any Occupation*."  JA 43.

Reliance Standard evaluated Ms. Rodriguez's continued eligibility for benefits under the Plan provisions applicable after twenty-four months and reached two conclusions.  First, her claimed disability was caused by or contributed to by a mental or nervous disorder.  JA 3.  Second, the records did not demonstrate that she was suffering from a physical impairment that prevents her from performing sedentary work.  JA 3.  Therefore, benefits were discontinued.

Based on the grant of discretion, Reliance Standard's claim decision can only be overturned if it was arbitrary and capricious.  JA 47; *Metro.  Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  To prevail in this appeal Rodriquez must prove that Reliance Standard's claim decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law."  *See Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009).  As two judges have correctly concluded, the evidence does not come close to supporting the conclusion urged by Ms. Rodriguez.

A.    Substantial Evidence Supports the Application
      of the Plan's Twenty-Fourth Month Limitation

Reliance Standard denied additional benefits based in part on the conclusion

that the claimed disability was caused by or contributed to by a mental or nervous

disorder.  JA 3.  As her principle argument on appeal, Ms. Rodriguez claims that

there is "no evidence" supporting the denial of additional benefits based on the

limitation applicable to mental or nervous disorders.  This argument is belied by

Ms. Rodriguez's own statements and the records from her own treating doctors.

Ms. Rodriguez would have this Court believe that Reliance Standard relied

on a single comment from a doctor it retained in support of the applicability of the

limitation.  See Brief of Appellant at page 19.  To be sure, Dr. Faller's opinion

regarding a "psychological component" to the claim supports Reliance Standard's

application of the limitation and the denial of further benefits.  JA 1088.  But there

are many more records that support the denial of the claim.

Ms. Rodriguez treated with Richard Podell, M.D., whose notes include the

diagnosis of "anxiety" under the doctor's "impressions."   JA 440, 887.   Dr.

Podell's treatment records also refer to Ms. Rodriguez taking "anti-anxiety"

medication twice daily.  JA 432.  According to a May 27, 2010 note from Dr.

Podell, Prozac was prescribed with a plan to try Diazepam if she became "more

15

anxious." JA 971. Both of these medications are prescribed to treat mental illnesses.[3]

Chronic fatigue is one of the reasons why Ms. Rodriguez claims she cannot work. JA 2. Robert Lintz, M.D., a different treating doctor, reported that "stress" aggravated Ms. Rodriguez's complaints of fatigue, further contradicting her statement that there is "no evidence" that she suffers from a mental or nervous disorder. JA 1178, 1188. Finally, Ms. Rodriguez told her doctor that "anxiety" was associated with her dizzy spells. JA 890. While Ms. Rodriquez claims that there is "no evidence" supporting the conclusion that she suffers from a mental or nervous disorder, Reliance Standard has identified *substantial* evidence in the record.

On page 20 of her brief, Ms. Rodriguez asserts additional arguments that are without merit in an attempt to avoid the Plan's twenty-four month limitation. She argues that "[t]he Plan does not provide for termination based upon a psychiatric condition." This statement is contrary to the plain language in the Policy which states that:

---

[3] The Court can take judicial notice of the fact that these medications are prescribed for the treatment of anxiety and other mental illnesses. *Anspach v. Phila. Dept. of Public Health*, 503 F.3d 256, 273 n.11(3d Cir. 2007) (a court may take judicial notice of public records, including records from the FDA). See also http://www.fda.gov/downloads/Drugs/DrugSafety/ucm088999.pdf and http://www.accessdata.fda.gov/drugsatfda_docs/label/2008/013263s083lbl.pdf.

> Monthly Benefits for Total Disability caused by or contributed
> to by mental or nervous disorders will not be payable beyond an
> aggregate lifetime maximum duration of twenty-four months.

JA 320. "Mental or Nervous Disorders" is defined in this section of the Plan to include "anxiety," "depressive disorders," "mental illness," "somatoform disorder" and numerous other psychiatric conditions, all of which are mentioned in the treatment records. JA 320-321. Based on this clear language, the only reasonable way to interpret the Plan is that benefits terminate after twenty-four months when the disability is caused by or contributed to by a mental or nervous disorder.[4]

The next argument presented by Ms. Rodriguez is also refuted by the record. She argues that Reliance Standard's August 7, 2012 decision letter did not "name or identify any specific psychiatric condition." See Brief of Appellant at page 20. Contrary to this statement, the letter referred to Dr. Faller's opinion that Ms. Rodriguez "appear[ed] depressed." JA 322. Later in the letter Reliance Standard stated that "her primary impairment is psychiatric in nature with somatic manifestations." JA 324. Somatoform disorder and depressive disorders are among the conditions specifically identified in the Plan's definition of "Mental or Nervous Disorders." JA 321. Finally, the letter noted that several of the

---

[4] Based on the grant of discretion, Reliance Standard's interpretation must be followed as long as it is a reasonable one. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 124 (3d Cir. 2012). Here, it is the only reasonable interpretation.

claimant's own doctors prescribed psychiatric medications.  JA 324.  Once again, it is impossible to reconcile Ms. Rodriguez's position with the record in this case.

The next two points raised by Ms. Rodriguez are related and also easily dismissed.  She claims that the Plan requires more than the presence of an undefined psychiatric condition and that there must be an actual diagnosis of a mental or nervous disorder.  Ms. Rodriguez *was* diagnosed with a mental illness - anxiety - by her own doctor for which he prescribed *anti-anxiety* medications and treatment.  JA 437, 440, 887, 971.  Finally, a major basis for the disability claim is the dizzy spells which Ms. Rodriguez personally associated with her anxiety.  JA 890.  Therefore, it was reasonable to conclude that the claimed limitation was "caused by or contributed to by" the mental or nervous disorder.  JA 320.

According to Ms. Rodriguez, the district court incorrectly concluded that she had anxiety because Dr. Podell never stated that it caused or contributed to her claimed disability.  See Brief of Appellant at page 22.  There are many problems with this statement.  First, the issue before this Court is not whether the district court reached an incorrect conclusion.  It is whether Reliance Standard's decision can be considered arbitrary and capricious and for the reasons discussed above, it was not.

Second, Reliance Standard was not required to defer to any opinion of Dr. Podell simply because he is the treating doctor.  *See Black & Decker Disability*

18

*Plan v. Nord,* 538 U.S. 822, 834 (2003) ("courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician"). Reliance Standard has identified substantial evidence from the doctors' treatment records as well as independent evaluations which reasonably support the applicability of the mental or nervous disorders limitation to the claim. Therefore, the denial of the claim for additional benefits cannot be considered arbitrary and capricious.

In *Michaels v. Equitable Life Assur. Society*, 305 F. App'x 896, 903-04 (3rd Cir. 2009), this Court held that where "a disabled claimant suffer[s] from both mental and physical conditions, neither of which [is] independently debilitating under the [p]lan, and the combined effect of those conditions render[s] the claimant totally disabled," the claimant is not entitled to benefits under plan providing two-year cap for disability "caused to any extent by a mental condition." Benefits may only continue if the "physical disability [is] independently sufficient to render [claimant] totally disabled." *Id*.

As explained below, the evidence does not come close to proving that Ms. Rodriquez is Totally Disabled from any occupation based only on a physical condition. There is also no legitimate dispute as to the applicability of the Plan's limitation on mental or nervous disorders. Therefore, benefits were properly denied.

19

Finally, it is outrageous for Ms. Rodriguez to argue as she does on page 23 her brief that Reliance Standard admitted that but for the mental or nervous disorders limitation Ms. Rodriguez was eligible for continued payment of disability benefits.    Reliance Standard's initial denial letter stated that "there was not sufficient medical evidence to support continued restrictions and limitations that would prevent less than sedentary work capacity."  JA 310.  In the August 7, 2012 appeal denial letter, Reliance Standard told Ms. Rodriguez that "the information does not substantiate a *physical condition* that is at a level of severity that would preclude Ms. Rodriguez from work function."  JA 319 (emphasis added).  Ms. Rodriguez's misstatement of Reliance Standard's position is especially egregious since she raised the same argument in her motion for summary judgment and Reliance Standard corrected the error in its response.

Nothing in the brief of Ms. Rodriguez in any way suggests that the district court failed to properly apply the law when it entered judgment in favor of Reliance Standard.  Instead, her arguments are based on assertions of fact that are completely unsupported by the record.  As such, they provide no basis for this Court to reverse the judgment of the district court.

B.    The Denial of Any Occupation Benefits
       is Supported by Substantial Evidence

Because Ms. Rodriguez already received benefits for twenty-four months, she had to prove that she was unable to perform the duties of "Any Occupation" at

the time they were discontinued.  JA 43.  As the district court correctly stated, a claimant's burden of proving disability under the any occupation standard is "especially heavy."  JA 7.  *See e.g. Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am.,* 222 F.3d 123 (3d Cir. 2000) (concluding that the claimant who was previously employed as a senior chemist was not totally disabled from any occupation because he could still perform "retirement-type" jobs).

As her second point on appeal Rodriquez argues that it was wrong to deny the claim after twenty-four months because there was no new medical information. Her position is incorrect on many levels.  First, it ignores the Plan's change in the definition of Total Disability and the applicability of the mental or nervous disorders limitation, both of which first came into play after twenty-four months. Even if there was no new medical information (which there was), the fact that benefits were previously paid does not mean that Plaintiff satisfied the new Plan requirements.   Second, there most certainly was new medical information and it supports Reliance Standard's conclusion that Ms. Rodriguez was not Totally Disabled from any occupation solely as a result of a physical condition.

      1.    The Terms of Coverage Changed
              When Benefits Were Denied.

Reliance Standard's prior approval of the benefit claim could not have prevented it from denying benefits at a later date.  Ms. Rodriguez is essentially

claiming eligibility based on estoppel, which has been rejected by the Third Circuit as justification for the continued payment of benefits. *Vitale v. Latrobe Area Hosp.,* 420 F.3d 278, 284 (3d Cir. 2005) (rejecting the plaintiff's argument that if the defendant made a mistake in granting benefits it must continue to pay benefits). Most important, estoppel cannot apply because Reliance Standard never paid disability benefits under the tests that applied to the claim at the time of the denial.

During the time benefits were paid to Ms. Rodriguez, she only had to prove that she was unable to perform the duties of her own occupation. JA 43. It also did not matter whether her symptoms were caused by a physical or mental disease. The requirements to receive benefits under the Plan changed by the time Reliance Standard denied the claim after twenty-four months. Instead of just her own occupation, Rodriquez had to prove that she was unable to perform the duties of *any* occupation. JA 43. Additionally, as explained above, Ms. Rodriguez was not eligible to receive benefits for any condition that was caused by or contributed to by a mental or nervous disorder. JA 55. Benefits were never paid to Ms. Rodriguez while these Plan terms applied to the claim. Therefore, there are no inconsistencies in Reliance Standard's claim decisions.

Ignoring the eligibility requirements that apply to her claim after twenty-four months, Ms. Rodriguez argues on page 31 of her Brief that the report prepared by Jason Faller, M.D., supports her continued eligibility. Dr. Faller is a

Rheumatologist who examined Rodriquez as part of Reliance Standard's review of her eligibility during the first twenty-four months of the claim. JA 1085. Nothing in the report of Dr. Faller supports the claim of Ms. Rodriguez.

Dr. Faller attributed the fatigue, which is the primary basis for the claim, to a "psychological component." JA 1088. Dr. Faller believed that Ms. Rodriguez might benefit from "antidepressant medication." JA 1089. Whether the fatigue was caused by a psychological condition did not matter when Dr. Faller prepared his report. It did matter when benefits were discontinued.

Instead of supporting her eligibility, Dr. Faller repeatedly states in his report that there are no objective findings supporting the limitations claimed by Ms. Rodriguez. JA 1088. Dr. Faller found no symptoms related to the neck, back, left arm and hand pain on examination. JA 1088. Ms. Rodriguez did not have "the typical trigger points" associated with fibromyalgia. JA 1088. Based only on the lack of objective evidence, the claim denial cannot be considered arbitrary and capricious. *See Balas v. PNC Fin. Servs. Grp., Inc.,* No. 10-249, 2012 WL 681711, at *10 (W.D. Pa. Feb. 29, 2012) (explaining "courts within the Third Circuit have held that it is not an abuse of discretion to require objective evidence that a condition . . . is sufficiently disabling," even if the condition can only be diagnosed by subjective evidence). Thus, even if the report of Dr. Faller can somehow be construed as supporting eligibility during the first twenty-four months

of the claim, the same report does not come close to supporting eligibility after twenty-four months.

2.    Reliance Standard Had New Evidence
      When it Denied the Claim for Benefits.

It is also inaccurate for Ms. Rodriguez to claim that there was no new medical evidence presented to Reliance Standard at the time the claim was denied. There was substantial new information which supports the denial of additional benefits. Reliance Standard obtained opinions from numerous independent physicians during the appeal, including a rheumatologist, otolaryngologists and a cardiologist, all of which qualify as "new" evidence.[5]

Michael Abeles, M.D., a Rheumatologist, examined Ms. Rodriguez during the appeal. JA 1206. Like Dr. Faller, Dr. Abeles did not believe that she was limited by fibromyalgia. JA 1210. He was unable to explain her complaints of dizziness and balance problems. JA 1211. From a rheumatology point of view, Dr. Abeles found no disabling condition. JA 1212. Dr. Abeles' one concern was whether Ms. Rodriguez was suffering from POTS.[6] JA 1210. Because this was outside of Dr. Abeles' practice area, Reliance Standard asked Ihsan Haque, M.D., a

---

[5] Ms. Rodriguez argues on page 26 of her Brief that there was no new evidence at the time of the denial because Drs. Abeles and Faller did not cite to new evidence in their reports. She fails to recognize that the reports of experts are themselves new evidence.

[6] Postural Orthostatic Tachycardia Syndrome.

cardiologist, to consider the diagnosis of POTS.  According to Dr. Haque, there was no evidence that Rodriquez has POTS.  JA 323.  As for the abnormal tilt table test, Dr. Haque noted that symptoms were not produced "during conditions of a normal work day" and were done while Ms. Rodriguez was not taking medication. JA 323.

Reliance Standard also sought opinions from two otolaryngologists related to her complaints of dizziness.  Stephen Freifeld, M.D. reviewed the medical records and also examined Ms. Rodriguez.  JA 1095.  He found "no evidence of impairment" from an otolaryngology standpoint.  JA 1099.  Especially relevant to the complaints of dizziness, the vestibular testing was normal.  JA 1099.  Likewise, David Foyt, M.D. concluded that Ms. Rodriguez "does have full work capacity and is not restricted in any way on activities" due to an otolaryngology condition. JA 324.

By taking out of context a nurse referral, Ms. Rodriguez argues that Reliance Standard agreed with her doctor's conclusion that she was disabled.  First, the note was prepared in July 2010 while Reliance Standard was still paying disability benefits and the bases for which benefits were terminated did not apply.  JA 257. Moreover, the final sentence of the note quoted by Ms. Rodriguez questions

whether the documentation was consistent with an inability to perform sedentary work. JA 257.[7] It hardly supported her eligibility for benefits.

The reports from numerous independent doctors identified above provide substantial evidence supporting the claim denial. The majority of these reports were prepared in connection with Reliance Standard's investigation of whether Ms. Rodriguez qualified for benefits after twenty-four months and, therefore, can only be considered "new" evidence, even though that is not a requirement. These independent opinions are important for an additional reason.

Courts have stated that when a benefit plan obtains independent opinions, it is evidence of a thorough and unbiased review. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 634 (9th Cir. 2009); *Calvert v. Firstar Fin., Inc.,* 409 F.3d 286, 292 (6th Cir. 2005) ("[W]e find that the failure to conduct a physical examination . . . may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination."); *Fought v. UNUM Life Ins. Co. of America*, 379 F.3d 997, 1015 (10th Cir. 2004) ("Where, as here, a conflict of interest may impede the plan administrator's impartiality, the administrator best promotes the purposes of ERISA by obtaining an independent evaluation.");

---

[7] On the bottom of page 26 of her Brief, Ms. Rodriguez cites to other portions of the claim file but these also pre-date and therefore did not address whether she was eligible for benefits under the terms that applied to her claim after twenty-four months.

*Hightshue v. AIG Life Ins. Co.,* 135 F.3d 1144, 1148 (7th Cir. 1998) ("Seeking independent expert advice is evidence of a thorough investigation.").

Here, Reliance Standard did not rely on just a paper review of the records. It requested three in-person examinations as well as other independent reviews. And when one of the examining doctors questioned whether Ms. Rodriguez has symptoms related to a condition outside of his area of expertise, Reliance Standard obtained an additional opinion from a specialist to address it. Under the facts of this claim, Reliance Standard's claim decision cannot be considered arbitrary and capricious.

Ms. Rodriguez argues on page 27 of her Brief that Reliance Standard accepted the opinions of the independent doctors solely because they support the denial of benefits. The claim was denied because she failed to submit adequate proof that she qualified for benefits. However, it is noteworthy that the cases cited by Ms. Rodriguez in support of her argument pre-date the decision of the Supreme Court in *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003). There, the Court confirmed that ERISA administrators are not required to give any special weight to the opinions of a treating doctor. *See also Nichols v. Verizon Commc'ns, Inc.,* 78 F. App'x 209, 211-12 (3d Cir. 2003) (claims administrator could rely on opinions of consulting doctors); *McCann v. Unum Provident,* No. 11-3241, 2013 WL 1145422, at *15 (D.N.J. Mar. 18, 2013) (finding that "[b]oth the

Third Circuit Court of Appeals and district courts therein have concluded that a plan administrator that enjoys discretionary authority to determine eligibility for benefits may (1) rely on the opinions of nontreating physicians and, (2) accord those opinions greater weight than the opinions of treating physicians").

  C.  <u>Ms. Rodriguez Relies on Impermissible Evidence</u>

The law of this Circuit is clear. When reviewing a plan's denial of benefits under the arbitrary and capricious standard, a court is limited to considering only that evidence that was before the Plan at the time of its final decision. *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997) ("Under the arbitrary and capricious standard of review, the 'whole' record consists of that evidence that was before the administrator when he made the decision being reviewed"); *Johnson v. UMWA Health & Ret. Funds*, 125 F. App'x 400, 405 (3d Cir. 2005) ("This Court has made clear that the record for arbitrary and capricious review of ERISA benefits denial is the record made before the Plan administrator, which cannot be supplemented during the litigation").

Contrary to this well-settled rule, Ms. Rodriguez repeatedly refers to a report prepared by Ellen Rader Smith several months after Reliance Standard's final claim decision on August 7, 2012. JA 319. According to Ms. Rodriguez, the district court "ignored" Ms. Smith's opinions. See Brief of Appellant at page 29.

The district court did not "ignore" Ms. Smith's opinions. The court refused to consider the report because it is not included in the administrative record.

Without much elaboration, Ms. Rodriguez argues on page 28 of her Brief that the Court may consider the report of Ms. Smith to determine the weight that should be given to the reports of Drs. Faller and Abeles. There is no Third Circuit authority that supports this statement. According to Ms. Rodriguez, use of the Smith Report is allowed under *O'Sullivan v. Metropolitan Life Ins. Co.*, 114 F. Supp. 2d 303 (D.N.J. 2000). While *O'Sullivan* is obviously not binding on this Court, it also does not support her position. On the contrary, the court stated it was unable to locate "applicable authority that would support looking beyond the administrative record when deferentially reviewing a plan administrator's factual determination that a claimant is ineligible for benefits." *Id*. at 309.

This is not a case where Ms. Smith's report is relied on to assist the court in understanding the meaning of medical terms. *Id*. at 310. Ms. Smith is not a medical doctor; therefore, she cannot provide such insight. Instead, Ms. Rodriguez is attempting to supplement the record with the *opinions* of Ms. Smith, which is not allowed.

The fact that Dr. Abeles' report was prepared during the appeal also does not provide a basis for Ms. Rodriguez to submit new evidence. Courts have consistently held that a claimant does not have a right to review and comment on

reports obtained during the administrative appeal. *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1166 (10th Cir. 2007) ("In light of the sum procedural requirements of 29 C.F.R. § 2560.503-1 and the Department's explanation of those regulations, we hold that subsection (h)(2)(iii) does not require a plan administrator to provide a claimant with access to the medical opinion reports of appeal-level reviewers prior to a final decision on appeal"); *Balmert v. Reliance Standard Life Ins. Co.,* 601 F.3d 497, 502 (6th Cir. 2010); *Glazer v. Reliance Std. Life Ins. Co.*, 524 F.3d 1241, 1245 (11th Cir. 2008); *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 n.2 (9th Cir. 2006).

There is no reason why Ms. Rodriguez could not produce a report from Ms. Smith while her claim was still pending. Dr. Faller issued his report before the *initial* denial of benefits and the report was referenced in the denial letter. JA 310. Therefore, Ms. Rodriguez had the opportunity to respond to Dr. Faller in her appeal. Moreover, the issues raised in Ms. Smith's report were clearly known to Ms. Rodriguez during her administrative appeal. None of the arguments raised by Ms. Rodriguez permit the Court to consider the Smith Report at this time and the district court did not err when it refused to consider the Smith Report. The fact that Ms. Rodriguez feels compelled to rely on this improper evidence can only be viewed as an admission on her part that the evidence within the record does not adequately support the disability claim.

D.    Ms. Rodriguez Received a Full and Fair Review

Once again repeating an argument that is unsupported and was properly rejected by the district court, Ms. Rodriguez argues on page 31 of her Brief that the denial letter was deficient because it did not tell her what information was needed to perfect her appeal.  According to Appellant, the letter included only a "generic statement."  Contrary to this statement, Reliance Standard's denial letter was more than adequate in telling Plaintiff why benefits were discontinued and the information she needed to provide.

Reliance Standard's denial letter identified the policy provisions that were relied on in terminating benefits.  JA 309-310.  The letter also summarized the bases for the claim, including the complaints of chronic fatigue and balance problems.  JA 310.  The letter then noted the lack of abnormal findings that would support continuing disability status, and specifically referred to records received from her own treating physicians, Drs. Podell and King, and the independent physicians.   JA 310.   These communications were more than adequate in explaining the bases for the denial and the information that Ms. Rodriguez needed to submit to continue to receive benefits.  Reliance Standard cannot be faulted for the inability of this claimant to satisfy her burden.

Citing to the district court decision in *Kao v. Aetna Life Ins. Co.,* 647 F. Supp. 2d 397, 411 (D.N.J. 2009), Ms. Rodriguez argues that the notice in this case

31

was insufficient.  The denial letter in *Kao* advised the claimant that the record contained "insufficient quantitative clinical findings" to support the claim and invited the claimant to, on appeal, "provide quantitative data and clinical evidence to support her appeal."  647 F. Supp. 2d at 411-412.  The court deemed this sufficient to satisfy ERISA's requirements, noting "[t]here is nothing cryptic about the meaning of [the] letter."  *Id*. at 412.

There is also nothing "cryptic" about the meaning of Reliance Standard's letter.  It identified the definition of Total Disability that applied to the claim after twenty-four months.  JA 309.  It also referred to the Mental or Nervous Disorders Limitation.  Then, the letter discussed the medical information and the absence of "physical impairment from sedentary work."  HA 310.  A reasonable person reading the letter would know that to perfect the appeal, Ms. Rodriguez had to provide proof of physical impairment that prevented her from even sedentary work.

As explained by the Second Circuit, it is the purpose of ERISA's notice requirement to "provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts."  *Juliano v. Health Maint. Org. of N.J.,* 221 F.3d 279, 287 (2d Cir. 2000) (internal quotation omitted).  The Court held that it was "apparent" that the claimant was adequately informed of her appeal rights based on her subsequent appeal.  *Id*.

It is also apparent in this case that Ms. Rodriguez was adequately informed of her appeal rights which she fully exercised.  Ms. Rodriguez was represented by her current attorney during her administrative appeal.  JA 1141.  The appeal letter was prepared by counsel, is several pages in length and enclosed medical reports relied on by Ms. Rodriguez in seeking additional benefits.  JA 1141-1155.  In the appeal letter, counsel for Ms. Rodriguez recognized that the denial was based in part on the Mental or Nervous Disorders Limitation but made the same erroneous argument he makes in this Court that there was "no evidence of any medical opinion that supports this conclusion."  JA 1141.

Referring to the denial letter from Reliance Standard, the appeal letter also recognizes that benefits were denied because the records "did not provide sufficient medical evidence to support continued restrictions."   JA 1142.  Throughout the letter, counsel for Ms. Rodriguez disputed Reliance Standard's conclusion that she "is not disabled as she can perform sedentary work." JA 1143.  As supposed support for her position, Ms. Rodriguez attached to her appeal records from her treating doctor.  JA 1142.

This case does not involve a claimant who was unaware of the bases for the denial or what information was needed.  As with her attempt to supplement the record with new evidence, this can only be viewed as a concession on the part of Ms. Rodriguez that the information in the record is insufficient to support the

claim.  This is not, however, through any fault of Reliance Standard.  Because Reliance Standard's claim decision is reasonable and supported by substantial evidence in the record, it cannot be considered arbitrary and capricious.  *Fleisher*, 679 F.3d at 121.

## <u>CONCLUSION</u>

For the foregoing reasons, the decision of the district court should be affirmed in its entirety.

Respectfully submitted,

/s/ Joshua Bachrach
Joshua Bachrach (PA Bar No. 68788)
Heather Austin  (PA Bar No. 84537)
Wilson, Elser, Moskowitz, Edelman &
Dicker LLP
The Curtis Center, Suite 1130 East
Independence Square West
Philadelphia, PA 19106-3308
(215) 606-3906 (phone)
(215) 627-2665 (fax)
joshua.bachrach@wilsonelser.com

*Counsel for Defendant-Appellee*

Dated:  October 15, 2014

## COMBINED CERTIFICATIONS

### 1.     Bar Membership

I hereby certify that I am admitted to and a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

### 2.     Word Count

I hereby certify that this brief complies with the type-volume requirements and limitations of Fed. R. App. P. 32(a).  Specifically, this brief contains 7,141 words in 14 point Times New Roman font.

### 3.     Certification of Service on Counsel

 I hereby certify that on October 15, 2014, I caused a copy of the foregoing Brief of Defendant-Appellee to be filed and served on the following counsel for Appellant, a Filing User, via the Court's ECF filing system, and 10 hard copies to be sent to the Clerk's office the same day.

Stephen R. Bosin
70 Grand Avenue, Suite 200
River Edge, NJ 07661
(201) 342-4117
(201) 342-8780 (fax)
StephenBosin@aol.com

**4.    Certification of Identical Compliance**

I hereby certify that the text of the electronic brief is identical to the text in the paper copies.

**5.    Certification of Virus Check**

I hereby certify that a virus detection program has been run on the file and that no virus was detected. The version of the virus detection program used was Kaspersky version 14.0.0.4651.

/s/ Joshua Bachrach
Joshua Bachrach (PA Bar No. 68788)
Heather Austin  (PA Bar No. 84537)
Wilson, Elser, Moskowitz, Edelman &
Dicker LLP
The Curtis Center, Suite 1130 East
Independence Square West
Philadelphia, PA 19106-3308
(215) 606-3906 (phone)
(215) 627-2665 (fax)
joshua.bachrach@wilsonelser.com

*Counsel for Defendant-Appellee*

Dated:  October 15, 2014